Derek W. Loeser, *pro hac vice forthcoming*
Gretchen Freeman Cappio, *pro hac vice forthcoming*
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900, Fax (206) 623-3384

Matthew J. Preusch (SBN 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PAMELA DELPAPA, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | No. 3:20-cv-06009<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Pamela Delpapa, individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), and alleges as follows:

**I.     INTRODUCTION**

1. In March 2020, Congress passed and the president signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. Law 116-136, March 27, 2020, 134 Stat. 281. That Act included several provisions to help mortgage borrowers. One of those provisions permitted borrowers affected by COVID-19 to request that their mortgage loan be temporarily placed in forbearance.

2. What followed was emblematic of Defendant Wells Fargo's negligent, reckless, and willful mistreatment of its customers.

3. Instead of waiting for customers to *request* that Wells Fargo place their loan in forbearance, Wells Fargo automatically did so. Customers like Plaintiff Pamela Delpapa only found out about Wells Fargo's actions—if they found out at all—when they went to apply for credit and were denied, saw the forbearance noted on a credit report, or were unable to make a mortgage payment, among other circumstances.

4. In short, Wells Fargo so badly mismanaged this CARES Act program that the bank ended up hurting the very people Congress intended to help. And it did so at the worst possible time for people like Ms. Delpapa. She lost her job due to the COVID-19 pandemic and, because of Wells Fargo, was unable at that time to refinance her mortgage at more favorable rates.

5. Ms. Delpapa therefore brings this proposed class action case on behalf of herself and others similarly situation who Wells Fargo has harmed.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from one defendant, there are 100 or more Class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

7. This Court has personal jurisdiction over Wells Fargo because Wells Fargo's parent entity, Wells Fargo & Company, maintains its principal office in California, and Wells Fargo regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and derives substantial revenue from services provided to persons in this District and in California.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant and Defendant has sufficient contacts with this District and California.

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District.

### III. INTRADISTRICT ASSIGNMENT

10. This case is properly brought in the San Francisco Division of the Northern District of California. Under Local Rule 3-2(c), cases are to be filed in the Division "in which a substantial part of the events or omissions which give rise to the claim occurred."

11. Because Wells Fargo's parent company maintains its headquarters in San Francisco, under Local Rule 3-2(e), the proper venue for this case is the San Francisco Division of the Northern District of California.

### IV. PARTIES

12. Plaintiff Pamela Delpapa is a resident and citizen of Riverside County, California.

13. Defendant Wells Fargo Bank, N.A. is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. provides Wells Fargo & Company personal and commercial banking services, and it is Wells Fargo & Company's principal subsidiary. Well Fargo Bank, N.A. is also the successor by merger of Wells Fargo Home Mortgage, Inc., an it is the principal operating subsidiary of Wells Fargo & Company, which is headquartered in San Francisco, California.

### V. FACTUAL ALLEGATIONS

**A. Wells Fargo's Faulty Forbearance Program**

14. Congress provided in the CARES Act that borrowers with government-sponsored entity ("GSE") mortgages—those backed by Freddie Mac or Fannie Mae—could request to suspend mortgage payments due to COVID-19 by having the loans put in forbearance.

15. When a mortgage servicer like Wells Fargo places a loan in forbearance, it permits borrowers to suspend or reduce mortgage payments for a limited time. However, those payments are not forgiven; they are just delayed. The borrower must still repay the missed payment in the future, often by adding them to the end of loan or—if the borrower is able—paying them off before the loan ends. Moreover, during forbearance, interest continues to accrue even though it is not being paid down.

16. The CARES Act provides affected borrowers the right to request and obtain a forbearance for up to 180 days as well as an extension for up to another 180 days (for a total of up to 360 days).

17. Specifically, Section 4022 of that Act provides that "a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan, regardless of delinquency status, by— (A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency."

18. Under Section 4022, the default forbearance period is 180 days, but borrowers may also request a subsequent 180-day extension. However, "at the borrower's request, either the initial or extended period of forbearance may be shortened." As the U.S. Department of Housing and Urban Development's Inspector General explained in an April report, "The borrower also has the option **at any time** to shorten the forbearance period and resume payments." (emphasis added).

19. In addition, Section 4023 provides similar relief for borrowers with multifamily residential properties: "A multifamily borrower with a Federally backed multifamily mortgage loan that was current on its payments as of February 1, 2020, may submit an oral or written request for forbearance under . . . to the borrower's servicer affirming that the multifamily borrower is experiencing a financial hardship during the COVID–19 emergency." In response, the servicer "shall" document the financial hardship, provide a forbearance for up to 30 days, and provide extensions of the forbearance where warranted. Multifamily borrowers "shall have the option to discontinue the forbearance at any time" under Section 4023.

20. It appears millions of borrowers placed their loans in forbearance after passage of the CARES Act. As of August, the share of Fannie Mae and Freddie Mac loans in forbearance was 4.94%, according to the Mortgage Bankers Association. The Association estimated that 3.6 million homeowners are in forbearance plans. That's down from a spike of about 4.3 million homeowners in forbearance as of June 2020, after passage of the CARES Act. This image from the Association shows the increase in forbearances after the onset of the pandemic and passage of the CARES Act:



21. Forbearance can help people in temporary hardship due to COVID-19. But a survey by LendingTree found that 70% of homeowners who have gone into forbearance did not need the relief.

22. The GSEs have advised servicers like Wells Fargo to make sure borrowers like Plaintiff are fully informed about the downsides to a forbearance. As Fannie Mae directed in an August 2020 "FAQ" for servicers: "It is important that the borrower go into the forbearance plan understanding that at the end of the forbearance period the forborne payments must be accounted for. Borrowers should not be left with the impression that the missed payments are forgiven."

23. In addition, as Fannie May reminded servicers in a July 15, 2020 Lender Letter (LL-2020-02) "servicers must inform the borrower that the payments which are the subject of a forbearance

plan have only been delayed or reduced, not forgiven, and that once the forbearance plan is complete, one of the following must occur:

- the mortgage loan must be brought current through a reinstatement,
- the borrower is approved for another workout option,
- the mortgage loan is paid in full, or
- the servicer refers the mortgage loan to foreclosure in accordance with applicable law"

24. Regardless of whether a borrower needs the help or not, or is fully informed of the consequences, lenders may not put a loan in forbearance without a customer requesting it. As the Consumer Financial Protection Bureau explains, "You must contact your loan servicer **to request** this forbearance." Banks may not institute it automatically.

25. But that's exactly what Wells Fargo did. As documented by Plaintiff and in consumer complaints from across the nation, Wells Fargo automatically placed borrowers in forbearance when they contacted the bank by phone or online to merely inquire about their options.

26. As one consumer told the Consumer Financial Protection Bureau, a Wells Fargo employee admitted "that the system is like a 'hair trigger'" automatically placing loans into forbearance, "even though I did nothing to start a forbearance."

27. Wells Fargo has conceded in a statement to the press that it "may have misinterpreted customers' intentions."

28. That "misinterpretation" was widespread. The Consumer Financial Protection Bureau's database of consumer complaints lists numerous examples of similar complaints. This is a sample:

- "Due to a job loss, I reached out to Wells Fargo and asked for information on their Covid-19 mortgage relief program. To clarify, I only asked for information on the program. The representative on the phone stated that an information packet would be mailed to me. About a week later, a letter arrived from Wells Fargo stating that they are 'confirming short term payment relief for the account.' This was not what I had requested. In addition, the letter states 'We won't report this account to consumer reporting agencies.' It has now come to light that Wells Fargo has put a forbearance on the mortgage, preventing any ability to refinance."

- "Wells Fargo put my account in forbearance when I didn't request it. After talking to multiple individuals on the phone I was told that if you click the 'more info' button on the site that you will be automatically enrolled without asking."

- "Wells Fargo will NOT allow us to end our forbearance. We have spent over 7 hours trying to reach them to resolve this."

- "[W]e started getting email about COVID-19 relief from Wells Fargo, regarding mortgage assistance. I sent them an email for more information. . . I tried to pay my house note on the WF app, as I have always done. The app advised me that I did not have an active account, that's when we called to make the payment. We were told that our loan was in forbearance and we could make a payment, but it would not post to the loan until after the forbearance period was over."

- "I contacted my mortgage company WELLS FARGO to inquire about what types of services were available IF my renter 's were unable to make their payment due to covid. It was for an inquiry purpose and I was told that I would receive a letter regarding any programs available. . . . I did in fact receive a letter and in that letter it stated my mortgage was placed in forbearance! I did not request any forbearance. Recently I was notified by a lender that it showed on my credit report and have been trying to have it removed since then."

- "Wells Fargo put me into CARES act forbearance without my consent. I was unable to make a payment online like I usually do. I called and was on hold for an hour but finally was able to talk to a rep, …. I told them they put me into forbearance without my consent. He apologized and said that the system is like a 'hair trigger' even though I did nothing to start a forbearance, I've never missed a payment, have no reason to apply for forbearance and am able to make payments."

- "Wells Fargo has placed or enrolled me in forbearance without my permission. This has negatively impacted me as [redacted] has placed my home equity mortgage application in denial status because of this."

- "I did not sign anything to agree to forbearance and subsequent calls to them I stressed that Im paying my mortgage and dont want a forbearance. Instead they listed it on my

credit without authorization. When I called them they said it was an error n they are working on it. They ruined my wife and my credit."

- "I called Wells Fargo, and asked what relief they could provide due to Covid-19. . . . I am very familiar with how a forbearance versus a deferment works. I was adamant if all they could offer me was a forbearance that I was not interested and I was assured by the Wells Fargo rep that they would just put the 3 payments at the back end of the loan and it was not a forbearance so I agreed. Yesterday . . . I received a notice from Wells Fargo asking If I need to extend my forbearance or discuss repayment options for the missed payments. I am livid!"

29. Wells Fargo's blunder is not an inconsequential administrative glitch. Forbearance can have grave impacts on a borrower's credit history or access to credit. As Sen. Elizabeth Warren (D-Mass.) and Sen. Brian Schatz (D-Hawaii) wrote in a letter to Wells Fargo CEO Charles Scharf, the bank was "putting consumers at risk of greater financial hardship amidst one of the worst economic downturns in our country's history."

30. As NBC News reported regarding one the experience of one couple—Tammie and David Wilson—an unauthorized forbearance, "As long as the forbearance notation remains in their credit report, the Wilsons can't take advantage of rock-bottom interest rates and are stuck at Wells Fargo."

31. Wells Fargo may have been incentivized to place borrowers in forbearance because, once the forbearance period ends, those borrowers could be placed in a payment deferral program. And as part of COVID-19 relief, the GSEs provide servicers like Wells Fargo an incentive payment, capped at $1,000 per mortgage, for placing borrowers in repayment or deferral plans:

**SERVICER INCENTIVES**

Bulletin 2020-15 stated that the Servicer incentive for a COVID-19 Payment Deferral would be communicated at a later date. With this Bulletin, we are informing Servicers of the COVID-19 Payment Deferral incentive amount, as well as making the following temporary updates to other Servicer incentives:

| Incentive Type | Incentive Amount |
|---|---|
| Repayment Plan | $500<br>Effective for all repayment plans with a first payment due date under the repayment plan on or after July 1, 2020 |
| Payment Deferral/COVID-19 Payment Deferral | $500<br>Effective immediately for all Payment Deferrals/COVID-19 Payment Deferrals (NOTE: Payment Deferral evaluations do not begin until on or after July 1, 2020) |

As NBC News reported, "In some circumstances, banks can receive revenue when their customers apply for mortgage forbearance or arrange to defer payments under the CARES Act. Fannie Mae, for example, pays banks servicing loans up to $200 to cover legal fees associated with filing two notices of forbearance for each bankruptcy case. Once a borrower gets approval to defer his or her mortgage payments, a bank servicing the loan can receive $500 from Fannie Mae."

32. This is not the first time Wells Fargo has taken action that harms its customers without their consent. It is instead part of a well-established pattern at the bank. Most notably, Wells Fargo opened an estimated 3.5 million debit or credit accounts without customer consent, as alleged in a class action complaint brought by undersigned counsel in this District and resolved by a $142 million settlement finally approved by the Hon. Vince Chhabria.

**B.    Wells Fargo Placed Plaintiff's Loans in Forbearance Without Her Consent.**

33. One of the many victims of Wells Fargo is Plaintiff Pamela Delpapa. Ms. Delpapa lost her job at a nail salon due to COVID-19. Concerned about whether she would be able to make her mortgage payments, she called Wells Fargo—her mortgage servicer—to learn about her options. At that point, she was paid in advance five months in her mortgage payments; in fact, the Wells Fargo representative she spoke to said she would *not* be a candidate for assistance at this time but should feel free to call back in five months. She relied on this misrepresentation to her detriment.

34. Unbeknownst to her, after that call Wells Fargo placed her loan in forbearance anyway. She only found out when she called her mortgage broker to refinance her home. Her mortgage broker told her she could not refinance because her loan was in forbearance. She was understandably shocked.

35. When she called Wells Fargo to complain, a Wells Fargo employee told her that when a borrower calls the bank and pushes the button directing them to COVID information on mortgages, the bank automatically places those accounts in forbearance. This aligns with what has happened to other consumers, as reflected in consumer complaints collected by the Consumer Financial Protection Bureau and reported in the media.

36. Ms. Delpapa never requested that her mortgage be placed in forbearance. In a June letter to her, Wells Fargo admitted it placed her mortgage in forbearance without her consent and without discussing it with her "in detail":

> We found that On March 17, 2020, your account was set up for the 90-day forbearance option that was being offered to our customers. After listening to the phone call between you and our representative, we discovered that you never requested to be placed on the plan nor was the plan discussed with you in detail. On May 21, 2020, we updated the account and removed your account from the forbearance plan as you requested. Additionally we updated our reporting to ensure the forbearance comment was removed.

37. The bank's letter also conceded that the by reporting her mortgage as in forbearance, Wells Fargo may have damaged Ms. Delpapa's ability get consumer credit, as she experienced firsthand:

> The credit bureaus have independent credit score models. We cannot speculate how any of their proprietary models account for this; however, we do know, generally, those are not used for underwriting of credit. If you apply for credit while on a forbearance plan, however, the lender will see the "account in forbearance" comment on your credit report, and the fact that your account is in forbearance may impact your ability to qualify for new credit or refinance.

38. Wells Fargo's actions have thus caused concrete and particularized injury to Ms. Delpapa, which this complaint seeks to redress.

### VI. CLASS ACTION ALLEGATIONS

39. Plaintiff brings this complaint on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). The Class that Plaintiff seeks to represent is defined as follows:

> All residential mortgage borrowers with a Government Sponsored Enterprise-backed loan for whom Wells Fargo Bank, N.A., placed a residential mortgage into forbearance under the Coronavirus Aid, Relief, and Economic Security (CARES) Act without receiving the borrower's request for a forbearance and affirmance that the borrower is experiencing a financial hardship due to COVID-19.

40. In addition, Plaintiff seeks to represent the following California Class:

> All residential mortgage borrowers with a Government Sponsored Enterprise-backed loan for whom Wells Fargo Bank, N.A., placed a residential mortgage secured by real property in California into forbearance under the Coronavirus Aid, Relief, and Economic Security (CARES) Act without receiving the borrower's request for a forbearance and affirmance that the borrower is experiencing a financial hardship due to COVID-19.

41. Excluded from the Classes are Wells Fargo's officers, directors and employees; the judicial officers and associated court staff assigned to this case; and the immediate family members of such officers and staff.

42. **Numerosity**: The members of the Class are so numerous that joinder of all members would be impractical. Wells Fargo is one of the nation's largest home lenders and servicers, and media reports indicate borrowers in at least 14 states have experience non-requested forbearances. The Consumer Financial Protection Bureau has documented dozens of complaints. The precise numbers of members can be ascertained through discovery, including of Wells Fargo's records.

43. **Commonality and Predominance**: Common questions of law and fact predominate over any questions affecting only individual members of the Class. For Plaintiff and the Class, the common legal and factual questions include, but are not limited to the following:

   A. Whether Wells Fargo negligently or intentionally enrolled customers in forbearance programs without their consent;

   B. Whether Wells Fargo's Wells Fargo has breached terms implied in its contracts with Plaintiff and the Class Members;

   C. Whether Wells Fargo's actions or inactions violated the consumer protection statutes invoked herein;

   D. Whether Plaintiff and the Class members were damaged by Wells Fargo's conduct and, if so, the appropriate amount of damages;

   E. Whether, because of Wells Fargo's misconduct, Plaintiff and the Class are entitled to equitable and declaratory relief, and, if so, the nature of such relief.

44. **Typicality**: The representative Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all the members of the Class have been injured by the same wrongful practices of Wells Fargo. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

45. **Adequacy**: Plaintiff will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiff nor her attorneys have any interests contrary to or in conflict with the Class.

46. **Predominance and Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

47. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Wells Fargo has acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

48. Any difficulties in the management of this nationwide class will be minimal because California law will apply to all Class members' claims.

49. Wells Fargo has, or has access to, address and/or other contact information for the members of the Class, which may be used to provide notice of the pendency of this action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**Asserted on Behalf of Plaintiff and the Nationwide Class**

50. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

51. Plaintiff brings this claim on behalf of herself and the Nationwide Class or, in the alternative, on behalf of herself and the California Class.

52. Plaintiff, the Class members, and Wells Fargo were parties to a contract, referred to as a Deed, Deed of Trust, or Security (collectively, "Deed"). Wells Fargo may be either a signatory to that contract, as the mortgage lender, or an assignee of that contract as mortgage servicer. In Plaintiff's case, Wells Fargo, as the loan service, assumed the obligations of the original lender in Plaintiff's Deed:

> with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

53. In either case, those Deed's for GSE-backed loans are substantially identical for all borrowers in material respects. The covenant of good faith and fair dealing is a common foundation inherent in all of the Deeds between Plaintiff, Class members, and Wells Fargo.

54. Regardless of its terms, every contract contains an implied covenant of good faith and fair dealing. The implied covenant obligates the parties to cooperate so that each party may obtain the full benefit of performance of the contract. The duty of good faith and fair dealing means that parties may not interfere with or fail to cooperate in the other party's performance. Neither party may engage in conduct that impairs or prevents the other party from enjoying the benefits of the contract or engage in conduct that prevents the other party from performing under the contract.

55. Wells Fargo impliedly covenanted as a servicer that it would undertake its duties in good faith. In particular, Wells Fargo has a contractual duty under the Deed to apply payments it receives from borrower to interest, principal, and escrow items, in that order. Borrowers, in turn, must timely pay the amounts due for those items.

56. By placing Plaintiff and Class member in forbearance without their consent, Wells Fargo frustrated and interfered with the Plaintiff's and Class members' ability to perform under the Deeds and failed to cooperate with the Plaintiff's and Class members' performance of the contract.

57. No reasonable party would expect Wells Fargo would put their mortgage forbearance without their consent.

58. Wells Fargo likewise engaged in conduct that was contrary to the spirit of the contract and the Plaintiff and Class members' rights thereunder. Wells Fargo lacked diligence in performing its duties, acted recklessly in its servicing of the Plaintiff's and Class members' mortgages, and abused its power placing loans in forbearance without consent.

59. By its actions, Wells Fargo engaged in conduct that was contrary to the spirit of the contract, lacked diligence, and constituted an abuse of its power.

60. As a result of the Bank's breaches of the covenant of good faith and fair dealing, Plaintiff and the Class members were injured. Their damages include, but are not limited to, damage to their credit including increased borrowing costs.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**Asserted on Behalf of Plaintiff and the Nationwide Class**

61. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

62. Plaintiff brings this claim on behalf of herself and the Nationwide Class or, in the alternative, on behalf of herself and the California Class.

63. Wells Fargo received benefits by placing mortgages in forbearance, including but not limited to extending the terms of loans, entitling Wells Fargo to additional servicing fees.

64. Wells Fargo was also enriched at the expense of Plaintiff and the Class because, by placing their mortgages in forbearance, it kept their loans on its own books, preventing Plaintiff and the Class from refinancing with another institution. Those forbearances also provided a predicate for Wells Fargo to place GSE-backed mortgages in payment deferrals or repayment plans, making Wells Fargo eligible for GSE incentive payments of up to $1,000 per mortgage.

65. Wells Fargo's retention of these benefits is unjust because it placed those loans in forbearance without the consent of Plaintiff and the Class and in contravention of the requirements of the CARES Act.

66. As a result, Plaintiff and Class members are entitled to restitution, disgorgement, or both of the benefits Wells Fargo has unjustly retained, in the amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.***
**Asserted on Behalf of Plaintiff and the California Class**

67. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

68. Plaintiff brings this claim on behalf of the California Class.

69. California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices." Wells Fargo engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL as follows.

70. Wells Fargo violated the UCL's prohibition on fraudulent business acts or practices by failing to tell Plaintiff and Class members that, by merely contacting Wells Fargo, their loans would be placed into forbearance.

71. Wells Fargo's omissions were material to Plaintiff and the Class. Had they known the truth—that Wells Fargo had a "hair trigger" system that automatically placed them in forbearance—Plaintiff and Class members would not have contacted Wells Fargo to learn about potential relief under the CARES Act. Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealments, and omissions.

72. Plaintiff and Class Members relied Wells Fargo's omissions or half-truths to their detriment.

73. Wells Fargo's "hair trigger" forbearance program is also unlawful under the UCL because it violates Sections 4022 and 4023 of the CARES Act, which requires that a borrower affirmatively request that their mortgage be placed in forbearance, and affirmatively acknowledge they are experiencing a hardship due to COVID-19.

74. Additionally, Wells Fargo's practices are unlawful because they violate Regulation N, "Mortgage Acts and Practices—Advertising," which forbids "any person to make any material misrepresentation, expressly or by implication, in any commercial communication, regarding any term of any mortgage credit product[.]" 12 C.F.R. § 1014.3. Wells Fargo violated Regulation N by failing to inform borrowers that they were placing their mortgages in forbearance without their consent..

75. Wells Fargo's practices were also unfair under the UCL because placing borrowers' mortgages in forbearance without their consent is unfair to Wells Fargo's borrowers: it is contrary to established public policy; immoral, unethical, oppressive or unscrupulous; and causes injury to consumers that outweighs its benefits.

76. Plaintiff and Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiff and the Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices; any such orders or judgments as may be necessary to restore to Plaintiff and the Class members any money acquired by unfair competition, including restitution, as provided in Cal. Bus. & Prof. Code §§ 17203 and 3345; and any other just and proper relief available under the California UCL. To the extent these remedies are equitable, Plaintiff seeks them in the alternative to any adequate remedy at law she may have

**FOURTH CAUSE OF ACTION**
**California Consumer Credit Reporting Act, Cal. Civ. Code § 1785. 25** *et seq.*
**Asserted on Behalf of Plaintiff and the California Class**

77. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

78. Plaintiff brings this claim on behalf of the California Class.

79. The California Consumer Credit Reporting Act (CCRA) provides that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency

if the person knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a).

80. Wells Fargo, a "person" under the CCRA, furnished information on Plaintiff's and Class Member's mortgage forbearances that it knew or should have known was incomplete or inaccurate to consumer credit reporting agencies.

81. Wells Fargo acknowledged in its form letter to Plaintiff that it informed the consumer reporting agencies that Plaintiff's mortgage was in forbearance:

> plan. We also provided the credit bureaus with a comment code that says the account was in a forbearance plan. We have validated with FICO that this 'Account in Forbearance' code does not

82. That information was incomplete, inaccurate, or materially misleading because Plaintiff did not request that her account be placed in forbearance, and it included information that was negative to Plaintiff and Class members.

83. Plaintiff suffered actual damage as a result of this violation because she was not able to pursue a refinancing or otherwise suffered harm to her credit.

84. Wells Fargo's violation was willful under Cal. Civ. Code § 1785.31 because Wells Fargo acted with reckless disregard for the rights of Plaintiff and the Class in enacting a statutory scheme meant the help, not further harm, borrowers.

85. As a result of Wells Fargo's negligent and willful violations of the CCRA, Plaintiff seeks all available remedies under the CCRA, including actual damages, court costs, loss of wages, attorney's fees and, pain and suffering, and punitive damages.

**FIFTH CAUSE OF ACTION**
**Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788 *et seq.***
**Asserted on Behalf of Plaintiff and the California Class**

86. Plaintiff incorporates by reference every prior and subsequent allegation of this Complaint as if fully restated here.

87. Plaintiff brings this claim on behalf of the California Class.

88. The Rosenthal Fair Debt Collection Practices Act ("Rosenthal FDCPA") prohibits debt collectors from, among other things, making false, deceptive, or misleading representations in an effort to collect a debt. Cal. Civ. Code § 1788.

89. Wells Fargo is a "debt collector" because it "regularly . . . engages in debt collection" as a mortgage servicer. *See* Cal. Civ. Code § 1788.2(c). Plaintiff and Class members are persons, and their mortgage loans are "consumer debts" under the Rosenthal FDCPA. *Id.* § 1788.2(f), (g).

90. The Rosenthal FDCPA incorporates by reference and prohibits violations of the federal Fair Debt Collection Practices Act. Cal. Civ. Code § 1788.17. That includes the Federal Act's prohibition of "false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" including the false representation of the status of any debt, "communicating or threatening to communicate to any person credit information which is known or which should be known to be false," and the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. 15 U.S.C. § 1692e(2), (8), (10).

91. Wells Fargo violated the Rosenthal FDCPA through its violations of Section 1692e of the Federal Act, when it provided false, deceptive, or misleading information about the mortgage debt of Plaintiff and the Class; i.e., that Plaintiff and the Class has requested a forbearance.

92. As a result of Wells Fargo's violation fo the State and Federal Acts, Plaintiff is entitled to actual and statutory damages, fees, and costs available under those Acts. *See* Cal. Civ. Code § 1788.17; 15 U.S.C. § 1692k.

## VIII.   REQUEST FOR RELIEF

93. Plaintiff, individually and on behalf of all others similarly situated, requests that the Court enter judgment against Defendant, as follows:

A. Certify the Class and, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), appoint Plaintiff as representative of the Class and appoint Plaintiff's counsel as Class counsel;

B. Award declaratory relief, including but not limited to a declaration that Wells Fargo's actions and business practices are unlawful and that Wells Fargo must comply with state and federal lending laws;

1  C. Award injunctive relief, including public injunctive relief permanently enjoining Wells
2  Fargo from performing further unfair and unlawful acts as alleged;
3  D. Award all recoverable compensatory, statutory, and other damages sustained by
4  Plaintiff and the Class, including disgorgement, penalties, unjust enrichment, and all
5  other relief allowed under applicable law;
6  E. Grant Plaintiff and the Class awards of restitution and/or disgorgement of Wells Fargo's
7  profits from its unfair and unlawful practices described above;
8  F. Award all costs of prosecuting this action, including attorneys' fees and expert fees as
9  may be allowable under applicable law;
10 G. Award both pre-judgment and post-judgment interest on any amounts awarded;
11 H. Award treble or punitive damages insofar as they are allowed by applicable laws;
12 I. Award appropriate individual relief as requested above; and
13 J. Grant such other and further relief, including declaratory, injunctive, and equitable
14 relief, as the Court may deem proper.

## IX.   DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 26th day of August, 2020.

                          KELLER ROHRBACK L.L.P.

By *s/ Matthew J. Preusch*
    Matthew J. Preusch (SBN 298144)
    801 Garden Street, Suite 301
    Santa Barbara, CA 93101
    (805) 456-1496
    Fax (805) 456-1497
    mpreusch@kellerrohrback.com

    Derek W. Loeser, *pro hac vice forthcoming*
    Gretchen Freeman Cappio, *pro hac vice forthcoming*
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900, Fax (206) 623-3384

    *Attorneys for Plaintiff*