Derek W. Loeser (*Pro Hac Vice*)
Gretchen Freeman Cappio (*Pro Hac Vice*)
Zachary W. Gussin (*Pro Hac Vice*)
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
(206) 623-1900, Fax (206) 623-3384

Matthew J. Preusch (SBN 298144)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
(805) 456-1496, Fax (805) 456-1497

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>WELLS FARGO FORBEARANCE LITIGATION | No. 3:20-cv-06009-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     LEGAL STANDARD ..................................................................................... 1

III.    ARGUMENT .................................................................................................. 2

        A.      Plaintiffs Adequately Plead a RICO Claim. ................................. 2

                1.      The Associated-In-Fact Enterprise Shares a Common Purpose
                        and Functions as an Ongoing Organization. .................................. 2

                2.      The Pattern of Racketeering Activity Is Ongoing......................... 4

        B.      Non-Restitutionary Disgorgement Is an Available Remedy for Unjust
                Enrichment. ................................................................................................. 4

        C.      Wells Fargo Owed a Duty of Good Faith and Fair Dealing to Plaintiffs.  8

        D.      Violating TILA, Wells Fargo Negatively Reported Information as a
                Result of its Failure to Credit Payments for Borrowers for Whom It Held
                the Note. .................................................................................................. 10

        E.      Plaintiffs Adequately Plead a RESPA Claim.......................................... 11

        F.      Plaintiffs' UCL Claim Adequately Alleges Wells Fargo's Unlawful
                Conduct. .................................................................................................. 12

                1.      The CARES Act ........................................................................... 13

                2.      California Civil Code Section 3273.11 ....................................... 13

                3.      Regulation N ................................................................................ 13

                4.      Regulations X and Z, TILA and RESPA. ................................... 13

        G.      The State Law Claims Are Not Preempted.............................................. 14

IV.     CONCLUSION ............................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agritrade, LP v. Quercia*,
    253 So. 3d 28 (Fla. Dist. Ct. App. 2017) ...................................................................7

*Allwaste, Inc. v. Hecht*,
    65 F.3d 1523 (9th Cir. 1995) ....................................................................................4

*Alvarado Martinez v. Eltman L., P.C.*,
    444 F. Supp. 3d 748 (N.D. Tex. 2020) ...................................................................15

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) .............................................................................12, 13

*Am. Master Lease LLC v. Idanta Partners, Ltd.*,
    225 Cal. App. 4th 1451, 171 Cal. Rptr. 3d 548 (2014)...........................................4, 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................1

*Bias v. Wells Fargo*,
    942 F. Supp. 2d 915 (N.D. Cal. 2013) .....................................................................3

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) ..................................................................................1

*Bruton v. Gerber Prod. Co.*,
    703 F. App'x 468 (9th Cir. 2017) ............................................................................4

*Che v. Aurora Loan Servs.*,
    LLC, 847 F. Supp. 2d 1205 (C.D. Cal. 2012)........................................................10

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    No. SACV 16-02277-CJC(DFMX), 2020 WL 1279236 (C.D. Cal. Jan. 16, 2020).................6

*City of Atlanta v. Hotels.com*,
    710 S.E.2d 766 (Ga. 2011)........................................................................................8

*Cottrell v. AT&T Inc.*,
    No. 19-CV-07672-JCS, 2020 WL 4818606 (N.D. Cal. Aug. 19, 2020)...................5

*Ellett Bros. v. U.S. Fid. & Guar. Co.*,
    275 F.3d 384 (4th Cir. 2001) ....................................................................................5

*Ellis v. J.P.Morgan Chase & Co.*
No. 12-CV-03897-YGR, 2015 WL 78190 (N.D. Cal. Jan. 6, 2015) ......................................2

*Ellis v. JPMorgan Chase & Co.*,
752 F. App'x 380 (9th Cir. 2018) ......................................................................................2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ............................................................................................6

*Fraser v. Team Health Holdings, Inc.*,
No. 20-CV-04600-JSW, 2022 WL 971579 (N.D. Cal. Mar. 31, 2022) .............................3

*Freeman v. Harleton Oil & Gas, Inc.*,
528 S.W.3d 708 (Tex. App. 2017) ....................................................................................8

*Friedman v. 24 Hour Fitness USA, Inc.*,
580 F. Supp. 2d 985 (C.D. Cal. 2008) .............................................................................2

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) ....................................................................................14, 15

*Harvey v. Bank of Am., N.A.*,
906 F. Supp. 2d 982 (N.D. Cal. 2012) .............................................................................8

*Harvey v. Bank of Am., N.A.*,
No. 12-3238 SC, 2013 WL 632088 (N.D. Cal. Feb. 20, 2013) ........................................9

*Hennington v. JPMorgan Chase Bank, N.A.*,
No. 1:17-CV-03853-MLB-CMS, 2018 WL 4474642 (N.D. Ga. Apr. 10, 2018) ...............10

*Hernandez, et al. v. Wells Fargo & Co., et al.*,
No. 3:18-cv-07354-WHA, Dkt. No. 87 (N.D. Cal. June 3, 2019) .....................................9

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
907 N.E. 2d 268 (N.Y. 2009) ...........................................................................................7

*In re JPMorgan Chase Mortg. Modification Litig.*,
880 F. Supp. 2d 220 (D. Mass. 2012) ............................................................................14

*Kossian v. Am. Nat. Ins. Co.*,
254 Cal. App. 2d 647 (1967) ...........................................................................................8

*Lanovaz v. Twinings N. Am. Inc.*,
No. 5:12-CV-02646-RMW, 2015 WL 729705 (N.D. Cal. Feb. 19, 2015) .......................8

*Marks v. Ocwen Loan Servicing*,
No. C:7-CV-2133-SI, 2009 WL 975792 (N.D. Cal. Apr. 10, 2009) .................................10

*Mazzei v. Money Store*,
308 F.R.D. 92 (S.D.N.Y. 2015) .......................................................................................10

*Meadows v. Bierschwale*,
   516 S.W.2d 125 (Tex. 1974) (adopting Comment E by Texas Supreme Court) ...................... 7

*Meister v. Mensinger*,
   230 Cal. App. 4th 381, 178 Cal. Rptr. 3d 604 (2014) ............................................................... 6

*Moore v. Wells Fargo Bank, N.A.*
   (2019) 39 Cal.App.5th 280 [251 Cal.Rptr.3d 779] ................................................................... 9

*Nava v. Kobe Steel, Ltd.*,
   No. 18-CV-01423-VC, 2019 WL 5173767 (N.D. Cal. Oct. 8, 2019) .................................... 6

*Nuvasive, Inc. v. Madsen Med., Inc.*,
   No. 13CV2077 BTM(RBB), 2016 WL 3166834 (S.D. Cal. June 7, 2016) ............................ 6

*Penikila v. Sergeant's Pet Care Prod.*,
   LLC, 442 F. Supp. 3d 1212 (N.D. Cal. 2020) ......................................................................... 4

*Quick Serve Concepts, LLC v. Cedar Fair, L.P.*,
   83 Va. Cir. 59 (2011) ............................................................................................................... 7

*Reyes v. Wells Fargo Bank, N.A.*,
   No. C-10-01667 JCS, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011) .......................................... 14

*S.E.C. v. Levin*,
   849 F.3d 995 (11th Cir. 2017) ................................................................................................. 5

*Sanford v. Memberworks*,
   625 F.3d 550 (9th Cir. 2010) ................................................................................................... 4

*Saunders v. Kline*,
   55 A.D.2d 887 (N.Y. App. Div. 1977) .................................................................................... 7

*Stevenson v. Allstate Ins. Co.*,
   No. 15-cv04788-YGR, 2016 WL 1056137 (N.D. Cal. Mar. 17, 2016) ................................... 4

*Stoker v. Bellemeade, LLC*,
   615 S.E.2d 1 (Ga. 2005) ........................................................................................................... 7

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
   299 F. Supp. 2d 565 (E.D. Va. 2004) ...................................................................................... 8

*TC Real Estate Servs. v. Lepe*,
   140 Cal. App. 4th 856 (2006) .................................................................................................. 6

*United States v. Feldman*,
   853 F.2d 648 (9th Cir. 1988) ................................................................................................... 2

*Williams v. Lakeview Loan Servicing LLC*,
   509 F. Supp. 3d 676 (S.D. Tex. 2020) .................................................................................... 14

*Williams v. Wells Fargo Bank N.A.*,
No. 11-21233-CIV, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011) ...........................................6

*Young v. Wells Fargo & Co.*,
671 F. Supp. 2d 1006 (S.D. Iowa 2009) ...............................................................................3

**Statutes**

15 U.S.C. § 1639f ....................................................................................................................10

15 U.S.C. § 1640 (a) ...............................................................................................................10

15 U.S.C. § 1692e ...............................................................................................................14, 15

Cal. Bus. & Prof. Code § 17205 ...............................................................................................8

Cal. Civ. Code § 1788.17 ........................................................................................................15

California Civil Code Section 3273.11 .....................................................................................13

Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. 116, 134
Stat. 281 (2020)................................................................................................................1, 13

Fair Credit Reporting Act (FCRA) ......................................................................................14, 15

Florida Consumer Practices Act (FCPA) .................................................................................14

Georgia Fair Business Practices Act (GFBPA) ........................................................................15

New York Deceptive Trade Practices Act (NYDTPA) ...............................................................14

Texas Debt Collection Act (TDCA) ..........................................................................................14

**Rules**

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................................1

**Other Authorities**

12 C.F.R. § 1014.2 ...................................................................................................................13

12 C.F.R. § 1014.3 ...................................................................................................................13

Consumer Finance Protection Board, Interpretive Rule "The Fair Credit Reporting
Act's Limited Preemption of State Laws," (June 28, 2022) ...................................................15

Real Estate Settlement Procedures Act—Regulation X (12 C.F.R. Part 1024), 2 Fed.
Reg. ................................................................................................................................11, 12

Restatement (First) of Restitution, § 1 (1937) ...........................................................................7

Restatement (Third) of Restitution and Unjust Enrichment § 44 (2011).......................................6

## I.    INTRODUCTION

Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") to protect Americans experiencing financial hardship due to the COVID-19 crisis and to empower them with tools to protect themselves. CARES Act, Pub. L. 116, 134 Stat. 281 (2020). One of those tools allows borrowers to request mortgage forbearance. CARES Act §§ 4022, 4023. While forbearance can be useful, it is not without consequence. Thus, the CARES Act protects borrowers' ability to choose whether forbearance is good for them by giving them the right to request it, rather than permitting a mortgage servicer to preemptively provide it. *Id.* Further, borrowers are empowered to discontinue forbearance at any time. *Id.*

Defendants Wells Fargo Bank N.A., and Wells Fargo & Co. ("Wells Fargo") turned that tool into a harmful instrumentality by unilaterally placing the borrowers' mortgages into forbearance without their knowledge or consent, thereby limiting their ability to refinance or secure other credit. Wells Fargo moves to dismiss most of Plaintiffs' claims related to this harmful conduct.[1] Dkt. 172, Motion to Dismiss Third Amended Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6), ("MTD"). For the reasons articulated below, Wells Fargo's motion should be denied.

## II.    LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the pleadings must be construed in the light most favorable to the plaintiff, and all material factual allegations accepted as true. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Dismissal is appropriate only where a complaint fails to allege facts sufficient to state a claim "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility analysis is "context-specific" and not only invites but "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[1] Defendants do not move to dismiss the Fair Credit Reporting Act, the California Consumer Credit Reporting Act, or gross negligence claims, and only partially move to dismiss the Unfair Competition Law, New York Deceptive Trade Practices Act, and Georgia Fair Business Practices Act claims.

1

## III.    ARGUMENT

2

**A.    Plaintiffs Adequately Plead a RICO Claim.**

3        Wells Fargo disputes that Plaintiffs have adequately alleged (1) the existence of an enterprise or,

4    (2) a pattern or practice of racketeering activity. Plaintiffs have more than adequately alleged both.

5

**1.    The Associated-In-Fact Enterprise Shares a Common Purpose and Functions as
        an Ongoing Organization.**

6

7        Wells Fargo cites to *Ellis v. J.P.Morgan Chase & Co.* for the proposition that normal third-party

8    vendors[2] engaged in routine commercial dealings cannot constitute a RICO associated-in-fact enterprise

9    with a "common purpose to commit fraud." MTD at 5; No. 12-CV-03897-YGR, 2015 WL 78190, at *5

10   (N.D. Cal. Jan. 6, 2015), aff'd sub nom. *Ellis v. JPMorgan Chase & Co.*, 752 F. App'x 380 (9th Cir.

11   2018) (Hereinafter, "*Ellis*"). In fact, *Ellis* confirms that the common purpose alleged need not be

12   fraudulent, just that it is in fact common. *Ellis* at *4. Plaintiffs identify Wells Fargo Bank N.A., Wells

13   Fargo & Co., Black Knight, and other third-party vendors as an associated-in-fact enterprise, with the

14   common purpose of placing borrowers into CARES Act Forbearances, not the common purpose to

15   commit fraud. Third Amended Complaint, Dkt. 162 ("TAC") ¶ 423. Plaintiffs point to the ways in which

16   the third-party vendors served that purpose, at the direction of Wells Fargo. TAC ¶ 424.

17       In the Ninth Circuit, it has long been the case that RICO liability extends to associated-in-fact

18   enterprises where one entity shares a non-fraudulent purpose with its third-party vendor participants.

19   *See United States v. Feldman*, 853 F.2d 648, 657 (9th Cir. 1988); *Friedman v. 24 Hour Fitness USA,*

20   *Inc.*, 580 F. Supp. 2d 985, 991 (C.D. Cal. 2008). Indeed, in *Friedman*, plaintiffs alleged an enterprise

21   consisting of the named defendant, who overcharged customers, and the third-party vendors that were

22   unwitting participants. *Id.*, at 991. The enterprise members shared a common purpose of effectuating the

23   payments, which the court found sufficient to satisfy the common purpose element of RICO. *Id.* Here,

24   the common purpose was to place borrowers into CARES Act forbearances. TAC ¶ 423. It matters not

25   that some participants may have done so without a culpable intent. *See Ellis* at *4. In *Freidman*, and

26   here, the third-party vendors were not alleged to have had culpable intent, or to have directed the affairs

27

28   _____
     [2] Black Knight is more than just a typical third-party vendor. Wells Fargo is its largest client, and
     accounts for 12% of Black Knight's revenues. TAC ¶ 167.

of the enterprise, and so were not RICO defendants. Likewise, in *Fraser v. Team Health Holdings, Inc.*, No. 20-CV-04600-JSW, 2022 WL 971579, at **12–13 (N.D. Cal. Mar. 31, 2022), dismissal was based on a lack of conduct directing the enterprise, and the absence of predicate acts. Here, Wells Fargo directed some of the third-party vendors to, for instance, file false notices in bankruptcy courts, and to disseminate false and misleading credit reporting regarding the status of the putative class members' mortgages. TAC ¶¶ 435-36.

Wells Fargo fails to alert the Court to a decision from this District in a case involving the bank, *Bias v. Wells Fargo*, in which this court held that a common purpose and enterprise can be founded on an enterprise-in-fact consisting of Wells Fargo Bank, N.A.; Wells Fargo & Co.; and a third-party vendor. 942 F. Supp. 2d 915, 940 (N.D. Cal. 2013). In *Bias*, Wells Fargo argued, as it does here, that its actions were simply "normal business dealings" without the existence of an enterprise or any "common purpose." *Id.* at 940. However, the court found that those were "fact-determinative" questions not to be resolved in a motion to dismiss. *Id.* at 942. Plaintiffs have sought additional facts to supplement those that are pled at TAC ¶¶ 166–169, 424, 431, but Wells Fargo has refused to produce communications and contracts with third-party vendors that played a role in this enterprise. *See* Dkt. 131.

The *Bias* court relied on another case that also involved Wells Fargo, *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009). In *Young*, the plaintiffs alleged a scheme "center[ing] around Wells Fargo's use of a computer system that ... [wa]s programmed to automatically assess excessive mortgage servicing fees following late payments." *Id.* at 1012. Considering these allegations on a motion to dismiss, the *Young* court held:

> Congress clearly intended RICO liability to extend to situations where one entity directs the formation of a RICO enterprise and then makes use of the association to further a pattern of unlawful activity, even where portions of the unlawful activity do not issue directly from the RICO enterprise.

*Id.* at 1028. Here, Wells Fargo directed the formation of a RICO enterprise comprised of three entities: Black Knight, whose proprietary software was used to automate the forbearance process so that Wells Fargo could place a million loans into forbearances; third-party vendors involved in filing false notices of forbearance in Chapter 13 proceedings; third-party vendors involved in exercising the early-buyout and resecuritization of those loans; and Wells Fargo Bank, N.A. TAC ¶¶166-169, 424, 431, 435–436.

1  Plaintiffs plead that the enterprise is an ongoing organization that functions as a continuing unit,

2  and the TAC offers more than sufficient detail as to how the enterprise engages in activities that affect

3  interstate commerce, including the billions in profits that Wells Fargo reaped and the dramatic harm

4  incurred by hundreds of thousands of borrowers across the nation. TAC ¶¶ 164, 178, 180–192.

5  **2.    The Pattern of Racketeering Activity Is Ongoing.**

6  Continuity can be shown through either an open-ended or closed-ended pattern. *See Allwaste,*

7  *Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995). The TAC identifies Wells Fargo's admitted pattern

8  and practice of placing borrowers into forbearances without a request and sending related false notices

9  and documents. Contrary to Wells Fargo's contentions, these actions are clearly related and spanned a

10  period of more than just a few months. By automatically extending forbearance plans that were never

11  initially requested or which the borrower attempted to terminate, Wells Fargo continued to place

12  borrowers into unwanted forbearances months later than it suggests. TAC ¶ 434–440. Based on the

13  experiences of Mr. Johnson, for instance, Plaintiffs' allegations support the inference that these

14  extensions, and the predicate acts associated with them, continued until the end of 2020, if not later,

15  showing a close-ended pattern of racketeering. *See Allwaste*, at 1528 (finding closed-ended continuity

16  could be found with less than a year.) Further, Wells Fargo's false representations to GSE's and CRA's,

17  which form some of its predicate acts, persisted after Wells Fargo ceased placing borrowers into

18  unauthorized forbearances. Indeed, these acts continue to this day, and demonstrate open-ended

19  continuity.[3] *Id.*

20  **B.    Non-Restitutionary Disgorgement Is an Available Remedy for Unjust Enrichment.**

21  Unjust enrichment is a standalone claim in California. *See Bruton v. Gerber Prod. Co.*, 703 F.

22  App'x 468, 470 (9th Cir. 2017); *Penikila v. Sergeant's Pet Care Prod.*, LLC, 442 F. Supp. 3d 1212,

23  1215 (N.D. Cal. 2020); *Stevenson v. Allstate Ins. Co.*, No. 15-cv04788-YGR, 2016 WL 1056137, at *5

24  (N.D. Cal. Mar. 17, 2016). One remedy for unjust enrichment is disgorgement, which is "broader than

25  restitution or restoration of what the plaintiff lost." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225

26  Cal. App. 4th 1451, 1482–83, 171 Cal. Rptr. 3d 548, 572–73 (2014), as modified (May 27, 2014). There

27

28

[3] The particularity requirement is relaxed when Plaintiffs cannot be expected to have personal knowledge of the relevant facts. *See Sanford v. Memberworks*, 625 F.3d 550, 558 (9th Cir. 2010).

are two types of disgorgement – restitutionary and non-restitutionary. *Id.* Typically, the defendants' benefit and plaintiff's loss are the same, but "many instances of liability based on unjust enrichment do not involve the restoration of anything the plaintiff previously possessed . . . includ[ing] cases involving the disgorgement of profits . . . wrongfully obtained." *Id.* (citation omitted.) This is non-restitutionary disgorgement, and it is available in all of the relevant jurisdictions.[4]

Wells Fargo placed borrowers into unrequested forbearances. TAC ¶ 99. Doing so led to loans becoming delinquent, as Wells Fargo turned off automatic payments for borrowers placed into forbearances and impeded borrowers' ability to make payments. TAC ¶ 153. It also led to massive profits for the bank. TAC ¶¶ 164-181. Placing borrowers into forbearances allowed Wells Fargo to reap a "huge windfall" by using the EPBO option when those loans became delinquent as a result of the forbearance. TAC ¶ 160. When borrowers, many of whom had no need for a forbearance and never requested that relief, exited their forbearances, Wells Fargo became eligible for incentive payments. TAC ¶ 180. For many borrowers, the forbearances extended the term of their loan, entitling Wells Fargo to additional servicing fees. TAC ¶¶ 174–178.

Wells Fargo argues that its enrichment did not come at Plaintiffs' expense because its profits are not coextensive with Plaintiffs' losses. MTD at *8. Yet that is not a requirement for unjust enrichment, either in California or in any of the relevant jurisdictions. The Ninth Circuit has resolved the issue of whether California law requires that a plaintiff suffer directly corresponding damages to recover for unjust enrichment. *Cottrell v. AT&T Inc.*, No. 19-CV-07672-JCS, 2020 WL 4818606, at *4 (N.D. Cal. Aug. 19, 2020). According to Ninth Circuit precedent, "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss," and "regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or . . . caused the plaintiff's property to become less valuable." *Id.;* citing *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599–600 (9th Cir. 2020).[5]

[4] For instance, in Florida, the remedy of disgorgement is measured by the defendant's ill-gotten gains rather than the plaintiff's losses. *See S.E.C. v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017); *Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) ("Restitution and disgorgement require payment of the defendant's ill-gotten gain, not compensation of the plaintiff's loss.").

[5] Professor Douglass Laycock, who helped spearhead the most recent Restatement on Restitution, submitted an amicus in that case, recognizing that "A Defendant Is Liable for Profits Derived from

1    There is no requirement that the profits come directly from the plaintiff. *See Nava v. Kobe Steel,*

2    *Ltd.*, No. 18-CV-01423-VC, 2019 WL 5173767, at *1 (N.D. Cal. Oct. 8, 2019).  For, "[t]o recover for

3    unjust enrichment, it is not essential that money be paid directly to the recipient by the party seeking

4    restitution." *Id.* (citation omitted). Wells Fargo made the same "directness" argument in *Williams v.*

5    *Wells Fargo Bank N.A.*, and the court denied it, finding it would "undermine the equitable purpose of

6    unjust enrichment claims". No. 11-21233-CIV, 2011 WL 4901346, at *5 (S.D. Fla. Oct. 14, 2011).

7    What's more, Wells Fargo's profits *are* tethered to the harm–being placed into an unrequested

8    forbearance–and some of the harms and benefits are coextensive. By placing borrowers into

9    forbearances, Wells Fargo impeded their ability to refinance. TAC ¶¶ 184. Doing so harmed Plaintiffs,

10    who were unable to capitalize on prevailing low interest rates, and benefitted Wells Fargo, as the value

11    of its mortgage servicing rights is tied to refinance rates. TAC ¶ 178.[6] Whether the link between the

12    totality of the consumer's harms and the totality of the bank's profits is too attenuated is one of degree,

13    not appropriate for disposition on a motion to dismiss. *Kobe Steel, Ltd.*, 2019 WL 5173767, at *1.

14    Nor is the availability of non-restitutionary disgorgement limited to cases involving alleged

15    breaches of fiduciary duty. For instance, Facebook was not alleged to have any fiduciary duty to the

16    plaintiffs in *In re Facebook, Inc. Internet Tracking Litig.*, and non-restitutionary disgorgement has been

17    awarded in cases involving an employment dispute,[7] identity theft,[8] and interference with a contract.[9]

18    An axiomatic instance where non-restitutionary disgorgement is appropriate, even without a fiduciary

19    duty, is when a defendant is a "conscious wrongdoer." *Meister v. Mensinger*, 230 Cal. App. 4th 381,

20    398, 178 Cal. Rptr. 3d 604, 617 (2014); *accord* Restatement (Third) of Restitution and Unjust

21    _____

22    Violation of a Plaintiff's Legal Rights Even if the Plaintiff Suffered No Corresponding Monetary

23    Loss", and that California has long recognized such claims. Brief of Professor Douglas Laylock as
       Amicus Curiae in Support of Plaintiffs-Appellants at 3–7, In re Facebook, Inc. Internet Tracking
       Litigation, No. 17-17486 (9th Cir. June 25, 2018), ECF No. 45-2 [https://perma.cc/3A5T-X8WM].

24    [6] Even more clearly, for loans that Wells Fargo held, including EPBO loans, the bank's profits included

25    interest payments made by the borrower. TAC ¶ 181. Had the borrowers been able to refinance at a
       lower rate, those payments would have been lower, if not paid to another loan servicer. Thus some of

26    Wells Fargo's enrichment *is* coextensive with the borrowers' harm.

       [7] *ChromaDex, Inc. v. Elysium Health, Inc.*, No. SACV 16-02277-CJC(DFMX), 2020 WL 1279236, at

27    *18 (C.D. Cal. Jan. 16, 2020).

       [8] *TC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860–61 (2006).

28    [9] *Nuvasive, Inc. v. Madsen Med., Inc.*, No. 13CV2077 BTM(RBB), 2016 WL 3166834, at *6 (S.D. Cal.
       June 7, 2016).

Enrichment § 44 (2011). Here, Plaintiffs allege that Wells Fargo's overbroad forbearance plan was the result of conscious wrongdoing that unreasonably interfered with their ability to refinance their loans and secure additional lines of credit. TAC ¶ 174, 178, 208–212, 434, 585. Thus, Plaintiffs have adequately alleged entitlement to non-restitutionary disgorgement.

Not only is this the law in California, but it is also the law in the Restatement of Restitution, which all relevant jurisdictions follow. *See* Restatement (First) of Restitution, § 1, com. *e* (1937) (referencing instances in which "a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust."). *See also, e.g., Saunders v. Kline*, 55 A.D.2d 887, 888 (N.Y. App. Div. 1977) (holding "it is not a necessary element of a cause of action for unjust enrichment to show that plaintiff suffered a loss corresponding to the gain received by the defendant."); *Stoker v. Bellemeade, LLC*, 615 S.E.2d 1, 14 (Ga. 2005) (cited to support the proposition that in many cases, measure of damages in unjust enrichment is based on benefit to the defendant, and not cost to the plaintiff); *Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex. 1974) (adopting Comment E by Texas Supreme Court); *Quick Serve Concepts, LLC v. Cedar Fair, L.P.*, 83 Va. Cir. 59, *5 (2011) (disgorgement of all profits is permissible in particularly egregious circumstances) (*citing Frank Shop, Inc. v. Crown Central Petroleum Corp.*, 264 Va. 1, 564 S.E.2d 134 (2002)).

None of the cases cited by Wells Fargo establish that non-restitutionary disgorgement is unavailable in those jurisdictions. For instance, in citing to *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, Wells Fargo relies on a statement about corresponding loss that is pure dicta, as the unjust enrichment claim in that case was denied due to the presence of a valid contract between the parties, meaning that there was no unjust enrichment. 907 N.E. 2d 268, 274 (N.Y. 2009).[10] Here, the benefit conferred on Wells Fargo by the borrowers was the entry of their loans into unrequested forbearances or forbearance extensions, which caused inflated delinquencies, rendering loans eligible for EPBO buyout. Mr. Johnson is one example of such a borrower. Although he requested a forbearance, prior to the expiration of the forbearances' three-month term, he asked to terminate the forbearance and

---

[10] In *Agritrade, LP v. Quercia*, 253 So. 3d 28, 33 (Fla. Dist. Ct. App. 2017), the court upheld summary judgment awarding unjust enrichment despite an alleged lack of "direct" conference of benefit.

1    attempted to make a payment. TAC ¶¶ 323-334. Wells Fargo did the opposite. In clear derogation of the

2    CARES Act, it extended his forbearance and did not apply his payment. *Id.* As a result, his loan became

3    eligible for EPBO, which Wells Fargo exercised. MTD at 11 n. 12.

4           In citing to *City of Atlanta*, Wells Fargo ignores the fact that the issue in that case was that there

5    was no unjust benefit at all—not that it was unlike the harm suffered by the plaintiffs. *See City of*

6    *Atlanta v. Hotels.com*, 710 S.E.2d 766, 767, 771 (Ga. 2011). *Freeman v. Harleton Oil & Gas, Inc.* did

7    not involve a "directness" requirement – it was decided on statute of limitations grounds. 528 S.W.3d

8    708, 737 (Tex. App. 2017). *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.* was

9    uniquely related to government contracting. 299 F. Supp. 2d 565, 576 (E.D. Va. 2004).[11]

10          Finally, Wells Fargo cites to *Lanovaz v. Twinings N. Am. Inc.*, No. 5:12-CV-02646-RMW, 2015

11   WL 729705 (N.D. Cal. Feb. 19, 2015), for the proposition that non-restitutionary disgorgement is not

12   available when a plaintiff is also seeking restitutionary disgorgement under the UCL. That citation is to

13   an order granting plaintiffs leave to file a motion for reconsideration, where the district court found it

14   clearly established that "[u]njust enrichment is a standalone cause of action per recent California and

15   Ninth Circuit law" and that "[n]onrestitutionary disgorgement is a remedy available under a claim for

16   unjust enrichment." *Id.* at *1. The same court also invited the plaintiff to address whether non-

17   restitutionary disgorgement of profits is an available remedy for unjust enrichment in a consumer

18   protection case. *Id.* at *3. However, the motion for reconsideration made clear that the profits sought

19   were restitutionary, and thus available under the UCL. *See id.* at *1. Here, Plaintiffs are primarily seeking

20   non-restitutionary disgorgement, which is neither duplicative of nor preempted[12] by the UCL.

21   **C.    Wells Fargo Owed a Duty of Good Faith and Fair Dealing to Plaintiffs.**

22          In *Harvey v. Bank of Am., N.A.*, a borrower sued a successor loan servicer and note-holder for

23   advising him to begin missing payments so he could become eligible for a HAMP modification. 906 F.

24   Supp. 2d 982, 987 (N.D. Cal. 2012). The claim for breach of the implied covenant of good faith and fair

25

26   [11] That some jurisdictions have few cases on point is neither surprising nor persuasive, as the "nature of
     equity cases concerned with problems of restitution makes definitive precedent unlikely." *Kossian v.*
27   *Am. Nat. Ins. Co.*, 254 Cal. App. 2d 647, 650 (1967).

28   [12] The UCL's remedies are cumulative to the remedies or penalties available under all other laws of
     California, including the common law remedy of non-restitutionary disgorgement for unjust
     enrichment. Cal. Bus. & Prof. Code § 17205.

1    dealing survived a motion to dismiss once the plaintiff identified a provision in the deed of trust requiring

2    plaintiff to make complete and timely payments when due. *Harvey v. Bank of Am., N.A.*, No. 12-3238

3    SC, 2013 WL 632088, at *3 (N.D. Cal. Feb. 20, 2013). By "frustrating" the borrowers' obligation to

4    pay, the defendant's conduct gave rise to a claim for breach of the implied covenant. *Id*. at*2-3. Likewise

5    here, Wells Fargo is alleged to be a party to the underlying contracts, either as the loan originator or as

6    an assignee. TAC ¶ 319. Wells Fargo frustrated Plaintiffs' obligations to make timely payments by

7    placing their mortgages into unrequested forbearances. Thus, Plaintiffs have sufficiently stated a cause

8    of action for breach of implied covenant of good faith and fair dealing because they allege the existence

9    of a contract between themselves and Wells Fargo.[13]

10        As Wells Fargo concedes, the Robinsons do have direct privity with the bank, as Wells Fargo

11    was a party to the Robinsons' deed as the mortgage lender. *See* TAC ¶ 319.[14] For the other Plaintiffs,

12    the TAC states exactly how Wells Fargo was a party to their respective contracts. *See id.* ("Wells Fargo

13    may be either a signatory to those contracts as the mortgage lender, as in the case of Robinsons, or an

14    assignee of that contract as mortgage servicer."). When the loans were initiated, they included mutual

15    obligations, including the duty to service the loan, an obligation that Wells Fargo assumed upon

16    becoming the loan servicer. The TAC includes a scanned copy of that assignment language (*Id.* at ¶ 498)

17    and identifies "a single contractual provision" that Wells Fargo frustrated. MTD at 10.

18

19

---

[13] Contrary to Wells Fargo's contention that Mr. Forsburg lacks standing, MTD, p. 11, several courts have found borrowers to have standing to bring claims pursuant to HAMP contracts. *See e.g.,* Order Re Motion to Dismiss*, Hernandez, et al. v. Wells Fargo & Co., et al.*, No. 3:18-cv-07354-WHA, Dkt. No. 87 at pp. 4-5 (N.D. Cal. June 3, 2019). What's more, Forsburg is not asserting claims against Wells Fargo based on HAMP regulations – but rather for breach of a separate agreement to modify his mortgage loan. The Complaint alleges offer and acceptance. TAC ¶¶ 224-235. It alleges performance by Forsburg, breach by Wells Fargo (in failing to effectuate the modification as agreed because of its placement of the Forsburg loan into forbearance without Forsburg's consent), and damages resulting from Wells Fargo's breach of its agreement to modify Forsburg's loan. *Id.* ¶¶ 241-253. Thus, Forsburg has standing for purposes of his good faith and fair dealing claim against Wells Fargo.

[14] Wells Fargo recognizes that the Robinsons have standing for this claim but argues that the act of placing their loan into an unrequested forbearance did not "frustrate" the contractual obligation because the Robinsons are not alleged to have become delinquent. The frustration occurred with the placement of their loan into forbearance, *see* TAC ¶ 503, and the issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact not suited for a motion to dismiss. *Moore v. Wells Fargo Bank, N.A.* (2019) 39 Cal.App.5th 280, 291–292 [251 Cal.Rptr.3d 779].

1    Plaintiffs recognize that while loan servicers do not automatically owe broad fiduciary duties to

2    borrowers, *Marks v. Ocwen Loan Servicing*, No. C:7-CV-2133-SI, 2009 WL 975792, at *7 (N.D. Cal.

3    Apr. 10, 2009), the borrower is owed the duties set forth in the loan contract. *Id.* ("[A] loan servicer does

4    not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract."). In the cases

5    cited by Wells Fargo, the plaintiffs failed to identify the contractual provisions that established privity,

6    instead relying on the servicer relationship alone. *See, e.g., Hennington v. JPMorgan Chase Bank, N.A.,*

7    No. 1:17-CV-03853-MLB-CMS, 2018 WL 4474642, at *13 (N.D. Ga. Apr. 10, 2018) ("absent an

8    assignment stating otherwise, a loan servicer is not a party to, or an assignee of, the note or security

9    deed."). Unlike in *Hennington*, Plaintiffs here allege that Wells Fargo is a party to their deeds through

10   the contractual provision assigning loan servicing obligations to subsequent loan servicers. TAC ¶ 498.

11   Similarly, in *Mazzei v. Money Store*, the court indicated that "a servicer is not automatically in

12   privity with a borrower where the servicer was not also the original lender" and that "[p]rivity will

13   depend on the nature of the relationship between the servicer and the borrower and whether there has

14   been a valid assignment of contractual duties to the servicer." 308 F.R.D. 92, 110 (S.D.N.Y. 2015). This

15   suggests that the question of whether there is a contractual relationship between a borrower and a loan

16   servicer is a highly fact-based inquiry not fit for determination on a motion to dismiss.

17   **D.   Violating TILA, Wells Fargo Negatively Reported Information as a Result of its Failure**
18        **to Credit Payments for Borrowers for Whom It Held the Note.**

19   "[N]o servicer shall fail to credit a payment to the consumer's loan account as of the date of

20   receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting

21   of negative information to a consumer reporting agency." 15 U.S.C. § 1639f. There is a private right of

22   action to enforce this provision, provided that the servicer also holds, or held, the note. 15 U.S.C. § 1640

23   (a). As the cases provided by Wells Fargo demonstrate, this right of action extends against loan servicers

24   who violate TILA if they currently own or ever owned the loan. *See Che v. Aurora Loan Servs.*, LLC,

25   847 F. Supp. 2d 1205, 1209 (C.D. Cal. 2012). For Mr. Johnson, and for hundreds of thousands of

26   borrowers, Wells Fargo initiated or purchased the loan at issue; thus, he has standing under TILA.

27   Wells Fargo unilaterally *extended* Mr. Johnson's forbearance, despite his request to *end* it (TAC

28   ¶¶ 327–332). While Wells Fargo disputes that it negatively reported information about Mr. Johnson as

a result of its failure to credit a payment, the TAC alleges otherwise. Mr. Johnson attempted to make payments, unaware that his account was still in a forbearance that he had requested be terminated, only to have Wells Fargo unlawfully retain his payments and continue to report his account as being in forbearance. TAC ¶¶ 26, 333–339, 342. Mr. Johnson made payments in July and August of 2020, which were not timely credited (TAC ¶¶ 333–336); and Wells Fargo reported Mr. Johnson as being in forbearance in July and August, and his unpaid principal balance increased, due to the bank's failure to credit payments (TAC ¶ 346). Thus, Mr. Johnson has stated a claim for injury under TILA because he has standing, and Wells Fargo negatively reported information because of its failure to timely apply Mr. Johnson's payments.

**E.      Plaintiffs Adequately Plead a RESPA Claim.**

Wells Fargo had a duty to provide accurate notices to Plaintiffs that submitted "incomplete applications for loss mitigation." The notices sent fell short of Regulation X's requirements for all borrowers, under 12 C.F.R. § 1024.41, in particular for borrowers who were entitled to notices that conformed to "any requirements established by the owner or assignee of the borrower's mortgage loan," the GSE's. 12 C.F.R. § 1024.38(b)(2)(v).

Wells Fargo attempts to conflate an "incomplete loss mitigation application," with a "request for a forbearance." MTD at 12. Communications that fall short of constituting a request for a forbearance can nonetheless be "incomplete applications for loss mitigation." An "application for loss mitigation" is a term of art, which triggers the requirement for loan servicers to send notices pursuant to RESPA, and includes communications that do not arise to the level of a request for a specific type of relief. Under the CFPB's official interpretation of Regulation X, an "inquiry" becomes an "application for loss mitigation" if "in giving information to the borrower, the borrower expresses an interest in applying for a loss mitigation option and provides information the servicer would evaluate in connection with a loss mitigation application." Real Estate Settlement Procedures Act—Regulation X (12 C.F.R. Part 1024), 2 Fed. Reg. Real Estate & Mortgage Lending Appendix 2A (4ᵗʰ ed.). Here, Delpapa, Green, Healy, Jacob, Prado, and the Robinsons provided information that Wells Fargo would evaluate in connection with loss mitigation, and Wells Fargo was therefore required to provide notices pursuant to RESPA. *See* TAC ¶¶ 198, 283–84, 304, 310–11, 356–57, 392. Evidently, Wells Fargo understood these communications

were "incomplete applications for loss mitigation" under RESPA—the notices that it sent to Plaintiffs, which it seeks to incorporate by reference, state that the forbearance provided was provided "based on an incomplete application for assistance." Dkt. 173-2.

Notwithstanding Wells Fargo's conclusory allegation that its notices complied with the requirements of Regulation X, they do not. Regulation X is replete with references to the borrowers' "acceptance" or "rejection" of "offers of forbearance." 12 C.F.R. § 1024.41(c)(2). Yet, by the time Wells Fargo sent its notices to Plaintiffs, they had already been placed into unrequested forbearances. The official interpretation of 12 CFR § 1024.41(c)(2)(iii)'s "timing of notice" requirement states that "[a] servicer may provide the written notice at the same time the servicer offers the borrower the program or plan." 12 C.F.R. Part 1024, 2 Fed. Reg. Real Estate & Mortgage Lending Appendix 2A. Here, Wells Fargo sent notices *after* placing borrowers' accounts in forbearances they never requested.

In all instances, the servicer is required to provide "accurate information" regarding loss mitigation options. 12 C.F.R. § 1024.38(b)(2)(i). The notices sent to Plaintiffs were not accurate, containing misleading assurances and inadequate warnings about the consequences of being placed into forbearances, including misleading representations about the lack of credit harm and the availability of deferments post-forbearance. TAC ¶ 77, 461-66.

Further, for loans owned by a GSE, the servicer is required to have policies and procedures that are reasonably designed to conform with the GSE's requirements. 12 C.F.R. § 1024.38(b)(2)(iii)(v). An example of an adequate notice for a federally-backed loan, the Fannie Mae model Evaluation Notice for Forbearance Plan Offer – Suspended Payment, is excerpted in the TAC ¶¶ 79 and 464.[15] Wells Fargo's notices fall short of that standard, as detailed in the TAC ¶¶ 461–66.

**F.    Plaintiffs' UCL Claim Adequately Alleges Wells Fargo's Unlawful Conduct.**

First, while Plaintiffs alleged a UCL claim based on both unlawfulness and unfair conduct, tellingly, Defendants ignore the unfair conduct theory. *See* MTD at 12, n.13. For unlawfulness, the UCL borrows violations of other laws and makes them independently actionable. *See Alvarez v. Chevron Corp.*, 656 F.3d 925, 933 n.8 (9th Cir. 2011). Plaintiffs have identified multiple predicate violations.

---

[15] Available at: https://www.fanniemae.com/content/guide_exhibit/evaluation-model-clauses.doc.

### 1.    The CARES Act

Wells Fargo argues that Section 4022 of the CARES Act does not prohibit servicers from unilaterally placing borrowers into forbearances without the borrowers' knowledge or consent. Plaintiffs detail the many instances where the CARES Act shows that the initiation, maintenance, and extension of a forbearance may only be done at the borrower's request. TAC ¶¶ 60–67. Section 4023 of the CARES Act makes this abundantly clear—specifically, subsection (c)(2), titled "Right to Discontinue." CARES Act, § 4023(c)(2).[16] Guidance in the public record clarifies that loan servicers may only initiate CARES Act forbearances upon a request from the borrower. *See* TAC ¶¶ 69–72. While there is no private right of action under the CARES Act, Wells Fargo violated the CARES Act by unilaterally placing borrowers into forbearances under it, and those violations are actionable through the UCL. *See Alvarez,* 656 F.3d 925, 933 n.8 (9th Cir. 2011).

### 2.    California Civil Code Section 3273.11

California Civil Code section 3273.11(a) requires mortgage servicers to "comply with applicable federal guidance regarding borrower options following a COVID-19 related forbearance." Cal. Civ. Code § 3273.11(a). Wells Fargo violated this code by, among other things, extending forbearances when the borrower requested to terminate that relief. TAC ¶¶ 329–44, 467.

### 3.    Regulation N

Regulation N forbids making "any material misrepresentation… in any commercial communication, regarding any term of any mortgage credit product." 12 C.F.R. § 1014.3. The term "mortgage credit product" is defined as "any form of credit that is secured by real property or a dwelling that is offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 1014.2. Wells Fargo violated Regulation N by failing to "inform borrowers that they were placing their mortgages in forbearance without their consent, and by sending notices with inaccurate information regarding the impact of forbearances." TAC ¶ 523.

### 4.    Regulations X and Z, TILA and RESPA.

Plaintiffs have stated claims for a violation of the UCL based on Regulations X and Z. *See supra.*

---

[16] While section 4023 applies to multi-family units, section 4022 should be read *in peri materia.*

**G.     The State Law Claims Are Not Preempted.**

None of the state law claims are fully preempted by the Fair Credit Reporting Act ("FCRA"). For instance, the New York Deceptive Trade Practices Act ("NYDTPA") and Georgia Fair Business Practices Act ("GFBPA") claims are based in part on conduct other than false credit reporting, which Wells Fargo appears to recognize by moving to dismiss those claims only to the extent they rely on allegations of inaccurate credit furnishing. *See* MTD at 15, TAC ¶¶ 549, 557. Similarly, the Rosenthal Act claim alleges that Wells Fargo violated 15 U.S.C. § 1692e, not 15 U.S.C. § 1681s-2, by providing false and misleading information to the Plaintiffs. TAC ¶ 545. Misleading statements in forbearances can constitute "debt collection activity," and thus trigger a Rosenthal Act claim. *See Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667 JCS, 2011 WL 30759, at *20 (N.D. Cal. Jan. 3, 2011); (finding misleading statements in forbearance agreement "debt collection activity" sufficient for a Rosenthal Act claim); *also see In re JPMorgan Chase Mortg. Modification Litig.*, 880 F. Supp. 2d 220, 242 (D. Mass. 2012).

Likewise, the Texas Debt Collection Act claim is based on the failure to provide adequate disclosures to the borrowers, as well as the provision of false credit information to the credit agencies. TAC ¶ 572. The Robinsons' and Castros' mortgages and notes are "debts," Wells Fargo's placement of those loans into forbearance were actions related to those debts, and mortgage servicing is within the ambit of "debt collection" under the TDCA. *See Williams v. Lakeview Loan Servicing LLC*, 509 F. Supp. 3d 676, 681 (S.D. Tex. 2020).[17]

For the Florida Consumer Practices Act claim, and the portions of the other state law claims that relate to the provision of inaccurate information to the CRAs, Wells Fargo argues those claims are preempted under FCRA. MTD at 14. The Ninth Circuit, and a recent CFPB interpretive rule, cast serious doubt on that argument. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1173 (9th Cir. 2009).

FCRA has two preemption clauses – a general clause, 1681t(a), and an enumerated clause, 1681t(b). The general clause only applies when a state law is inconsistent with FCRA, and then only to that extent. *See* 1681t(a). The enumerated clause provides that "[n]o requirement or prohibition may be

---

[17] The TDCA clearly considers mortgage servicers debt collectors—in fact, there are several express provisions that only apply to them. *Id.*

imposed under the laws of any state . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). As the Ninth Circuit has recently held, FCRA's enumerated preemption clause is limited by the term "no requirement or prohibition may be imposed," and thus, laws that merely "provide a vehicle for private parties" are not preempted by 1681t(b). *Gorman*, 584 F.3d 1147, 1173 (9th Cir. 2009). The relevant sections of the Rosenthal Act and the other state laws provide rights of action, but do not impose additional requirements or prohibitions. *See* Cal. Civ. Code § 1788.17; O.C.G.A § 10-1-393; *see also Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 756 (N.D. Tex. 2020). Thus, under *Gorman*, those state law claims are not preempted.

Importantly, the CFPB has weighed in on just this subject. The CFPB recently published an interpretive rule on the limited scope of FCRA preemption of state laws, interpreting 1681t(b) in a manner consistent with *Gorman. See*, Consumer Finance Protection Board, Interpretive Rule "The Fair Credit Reporting Act's Limited Preemption of State Laws," (June 28, 2022), https://files.consumerfinance.gov/f/documents/cfpb_fcra-preemption_interpretive-rule_2022-06.pdf [https://perma.cc/6PUE-ZRLP]. That rule clarifies that 1681t(b) only preempts laws that impose requirements that "relate to" and are "with respect to" conduct required by the enumerated portions of FCRA, explaining that a state law that "relates" to 1681s-2, but adds no requirements "with respect to" conduct described by that provision, is not preempted. *Id.*

Thus, the Rosenthal, TDCA, and NYTDA claims are not preempted as they are related to predicate violations of 15 U.S.C. § 1692e, a provision not included in the 1681t(b) enumeration, and are not inconsistent with the FCRA. In addition, even those claims which allege false and misleading credit reporting are not preempted, as the state laws merely provide private enforcement mechanisms, and impose no requirements both "related to" and "with respect to" 15 U.S.C. § 1681s-2.

## IV.    CONCLUSION

The Court should deny Wells Fargo's Motion to Dismiss in its entirety.

DATED this 4th day of November, 2022.

KELLER ROHRBACK L.L.P.

By  *s/ Zachary W. Gussin*
    Derek W. Loeser (*Pro Hac Vice*)
    Gretchen Freeman Cappio (*Pro Hac Vice*)
    Zachary W. Gussin (*Pro Hac Vice*)
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    (206) 623-1900, Fax (206) 623-3384
    dloeser@kellerrohrback.com
    gcappio@kellerrohrback.com
    zgussin@kellerrohrback.com

    Matthew J. Preusch (SBN 298144)
    KELLER ROHRBACK L.L.P.
    801 Garden Street, Suite 301
    Santa Barbara, CA 93101
    (805) 456-1496, Fax (805) 456-1497
    mpreusch@kellerrohrback.com

    Abbas Kazerounian (SBN: 249203)
    KAZEROUNI LAW GROUP, APC
    245 Fischer Avenue, Unit D1
    Costa Mesa, CA 92626
    ak@kazlg.com
    Phone (800) 400-6808, Fax (800) 520-5523

    *Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF SERVICE

I, Zachary Gussin, hereby certify that on November 4, 2022, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to all counsel of record who have appeared in this action.

*s/ Zachary W. Gussin*
Zachary W. Gussin