UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE WELLS FARGO FORBEARANCE LITIGATION | Case No. 20-cv-06009-JD<br><br>**ORDER RE MOTION TO DISMISS** |

This action consolidated several related cases alleging that defendants Wells Fargo Bank, N.A. and Wells Fargo & Company (together, Wells Fargo) put residential mortgage holders into forbearance without their knowledge or consent during the COVID-19 pandemic. *See* Dkt. No. 152 (consolidation order). Plaintiffs filed a third amended complaint (TAC), Dkt. No. 162, which runs for over 110 pages and alleges 14 claims ranging from the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, the Truth in Lending Act (TILA), 15 U.S.C. § 1601, the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, and the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, to a variety of state statutory and common law claims. *See* Dkt. No. 162 ¶¶ 413-587. The named plaintiffs seek to represent a nationwide class and six state classes of Wells Fargo customers. *Id.* ¶¶ 398-404.

Although plaintiffs are on a third amended complaint, this is the first occasion on which the Court has been asked to determine the plausibility of the claims under Federal Rule of Civil Procedure 12(b)(6). Motions to dismiss prior iterations of the complaint were terminated or withdrawn without decision after consolidation and other events. *See* Dkt. Nos. 61, 87, 122, 152. Wells Fargo asks to dismiss 11 of the 14 claims in the TAC. *See* Dkt. No. 172. The parties' familiarity with the record is assumed, and dismissal is granted and denied in part, with leave to amend.

**LEGAL STANDARDS**

The Court has discussed in other cases the standards governing a Rule 12(b)(6) motion to dismiss, and the discussion is incorporated here. *See McLellan v. Fitbit, Inc*., No. 3:16-cv-00036-JD, 2018 WL 2688781, at *1 (N.D. Cal. June 5, 2018). In pertinent part, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." To meet that rule and survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Because some of plaintiffs' claims sound in fraud, Rule 9(b) also applies. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A "pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (internal quotation and citation omitted). Conclusory allegations with no "particularized supporting detail" are not sufficient. *United States v. United Healthcare Ins. Co.,* 848 F.3d 1161, 1180 (9th Cir. 2016).

**DISCUSSION**

**I.    RICO CLAIM**

The RICO claim is dismissed with leave to amend. RICO may reach beyond its roots in organized crime, and may be alleged in non-criminal contexts for "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1962(c)). "The plaintiff must, of course, allege each of these elements to state a claim," and the Supreme Court has emphasized that simply "[c]onducting an

2

enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is mere commission of the predicate offenses." *Id.* "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.*; *see also United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (elements of a civil RICO claim). Although a RICO allegation requires no more than these elements, and the statute "is to be 'liberally construed to effectuate its remedial purposes,'" *Sedima*, 473 U.S. at 498 (citation omitted), a plausible civil RICO claim must satisfy the heightened pleading standards of Rule 9(b) and a variety of specific pleading requirements under the statute with respect to the alleged enterprise, predicate acts, injury, and causation. *See* 18 U.S.C. § 1962; *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

The TAC provides an abundance of allegations with respect to the conduct and pattern, but falls short on plausibly alleging a racketeering enterprise. An enterprise for purposes of RICO may consist of "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," and requires "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552-53 (9th Cir. 2007) (en banc) (internal quotations omitted). An associated-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).

The enterprise must also be an entity distinct from the defendant, and "not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). This means plaintiffs must allege facts demonstrating that the enterprise "is 'a being different from, not the same as or part of, the person whose behavior [RICO] was designed to prohibit,'" and is "either formally or practically separable from the person." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 362 (9th Cir. 2005) (citation omitted). RICO

3

liability "'depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Cedric Kushner Promotions*, 533 U.S. at 163 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)) (emphasis in original).

The TAC does not plausibly allege an enterprise distinct from Wells Fargo acting in its own business capacity. Plaintiffs say that Wells Fargo, Black Knight Inc. (a "mortgage loan servicing and borrower communication application"), and unidentified third-party vendors operated as an associated-in-fact enterprise with "the common purpose of maximizing their profits by placing borrowers into CARES Act forbearances." Dkt. No. 162 ¶¶ 166-67, 421-24. But the role of the unnamed vendors is opaque as to their identity, and the alleged conduct of Black Knight is consistent with legitimate business endeavors. Black Knight is said to have "capitalized on the COVID-19 crisis by marketing its MSP platform, distributing a white paper advertising its products as assisting mortgage servicers in establishing forbearance, allowing mortgage servicers to automate the management of forbearance programs," *id.* ¶ 168, and to have generated revenue by helping Wells Fargo identify "loans to be placed into forbearance through its automated mortgage servicing program," *id.* ¶ 169. Wells Fargo also allegedly used Black Knight's services "to identify borrowers who can be placed into deferment post-forbearance," "to convey COVID-forbearance specific false credit reporting to credit reporting agencies, to process loan modifications, and to effectuate early pool buyouts." *Id.* ¶ 424.

Accepting all of this as true for present purposes, these allegations do not plausibly establish that Black Knight was part of a RICO enterprise with Wells Fargo. Allegations of "a run-of-the-mill commercial relationship where each entity acts in its individual capacity to pursue its individual self-interest" are not enough to establish an enterprise. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 644, 655-56 (7th Cir. 2015); *see also River City Mkts., Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1463 (9th Cir. 1992) (evidence of "a routine business arrangement" was insufficient to establish an enterprise); *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) (affirming dismissal of RICO claim where allegations showed "only that the defendants had a commercial relationship, not that they had joined together to create a distinct entity for purposes of

4

improperly filling ranitidine and fluoxetine prescriptions"); *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 400 (7th Cir. 2009) (allegations of a "garden-variety marketing arrangement" were "insufficient to state a RICO claim based on an association-in-fact enterprise").

The allegations in the TAC establish only that Black Knight engaged in garden-variety business activities pursuant to a contract with Wells Fargo. That will not do to plausibly allege a RICO enterprise. "[S]omething more" is needed for the requisite common purpose and distinct enterprise, namely facts "tending to exclude the possibility" that Black Knight's actions were part of its routine business dealings. *Twombly*, 550 U.S at 554-55 (internal quotation omitted); *see also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.") (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs say that "the common purpose alleged need not be fraudulent," Dkt. No. 179 at 2, but that observation is of little moment with respect to the enterprise question here. A plausible enterprise of any sort has not been alleged. In addition, plaintiffs themselves described the common purpose in the TAC as a scheme to defraud bank customers, *see, e.g.,* Dkt. No. 162 ¶¶ 421-23, and so plaintiffs were required to plausibly allege that all the members of the "Fraudulent Forbearance Enterprise" were in on the fraud.

Overall, the RICO enterprise allegations are not enough to move forward. Plaintiffs will have an opportunity to amend the allegations.

## II.    UNJUST ENRICHMENT AND IMPLIED COVENANT CLAIMS

The claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing are dismissed. The TAC alleges these claims on behalf of a nationwide class without identifying the state law that is intended to apply nationally. *See* Dkt. No. 162 ¶¶ 497-518. The TAC invokes the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), as the basis of the Court's subject matter jurisdiction. Dkt. No. 162 ¶ 29. CAFA is a species of diversity jurisdiction, which means that the Court will apply state substantive law to resolve the claims. *See*

5

*In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167-68 (N.D. Cal. 2016). The TAC is unduly vague with respect to the state law that might apply, a deficiency aggravated by the fact that the named plaintiffs are citizens of six different states, and Wells Fargo is said to be a South Dakota business entity with a principal place of business in California. Dkt. No. 162 ¶¶ 40-51, 224.

In the motion briefs, the parties wandered across the United States in search of state law candidates. Wells Fargo appears to believe that the laws each named plaintiffs' state might apply, which does not advance the choice of law question for a national class in a meaningful way. *See* Dkt. No. 172 at 7 n.7. Plaintiffs focused on California and Florida law, while trying to leave the door open with a reference to "all of the relevant jurisdictions." *See* Dkt. No. 179 at 5-9. This is no way to litigate the claims of a nationwide class, and does not give Wells Fargo fair notice of the claims against it. *See, e.g.*, *In re Robinhood Data Sec. Litig.*, No. 21-cv-08906-JD, Dkt. No. 64 (N.D. Cal. Mar. 6, 2023); *see also Day v. Advanced Micro Devices, Inc.*, No. 22-cv-04305-VC, 2023 WL 2347421, at *1 (N.D. Cal. Mar. 2, 2023) ("The unjust enrichment claim is dismissed because, despite purporting to represent a nationwide class, the plaintiffs do not offer even one state's law as a representative sample."); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 760 (C.D. Cal. 2022) ("A group of plaintiffs cannot bring a claim on behalf of a 'nationwide' class without alleging the applicable states' laws.") (collecting cases).

Consequently, plaintiffs will be permitted to amend the nationwide class allegations with an eye towards indicating an appropriate choice of law for the unjust enrichment and implied covenant claims.

## III. TILA CLAIM

The request to dismiss the TILA claim is denied. As implemented through Regulation Z, TILA requires loan servicers to promptly credit mortgage payments. *See* 15 U.S.C. § 1639f ("[N]o servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency."); *see also* 12 C.F.R. § 226.36(c)(1)(i) (same). A loan servicer generally cannot be sued for violations of this

6

1    requirement unless the servicer "is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1);
2    *see also id.* § 1640(a) (providing a private right of action against "any creditor who fails to comply
3    with any requirement" of TILA); *id.* § 1602(g) (defining "creditor" as including "the person to
4    whom the debt arising from the consumer credit transaction is initially payable"); *Gale v. First*
5    *Franklin Loan Servs.*, 701 F.3d 1240, 1245-46 (9th Cir. 2012).

6    Wells Fargo says that the named plaintiffs lack standing to sue under TILA because the
7    TAC does not establish that Wells Fargo owns or ever owned their specific loans. Dkt. No. 172 at
8    11-12. The point is not well taken. The TAC includes ample factual allegations that Wells Fargo
9    placed the named plaintiffs' loans in forbearance and "voluntarily repurchased tens of billions of
10   dollars of loans that had been placed into fraudulent forbearance." *See, e.g.*, Dkt. No. 162 ¶¶ 9,
11   164-65, 181, 193-397, 457. At pleadings stage, there are enough specific factual allegations to
12   support a plausible inference that Wells Fargo repurchased, and at some point owned, at least
13   some of the named plaintiffs' loans.

14   The TAC also plausibly alleges that Wells Fargo failed to timely credit plaintiffs'
15   mortgage payments. For example, it says that Wells Fargo did not report that plaintiffs Luis and
16   Marisol Castro made their mortgage payments from April to June 2020 because their loan was in
17   forbearance, *id.* ¶¶ 274-76, and that Wells Fargo did not timely apply a June 2020 mortgage
18   payment made by plaintiff Samara Green and instead placed it in in an "unapplied fund" because
19   her loan was in forbearance, *id.* ¶¶ 285, 292-95. Wells Fargo quibbles with timeline of unapplied
20   payments alleged by plaintiff Charles Johnson, but this raises factual issues beyond the scope of a
21   12(b)(6) motion. *See* Dkt. No. 172 at 11 n.12.

## IV.    RESPA CLAIMS

The RESPA claims are dismissed. As implemented through Regulation X, RESPA imposes notification requirements on loan servicers that receive incomplete applications for loan modification, and provides a private right of action for borrowers to enforce those requirements. *See* 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41. One requirement is that "[p]romptly after offering a payment forbearance program" in response to an incomplete modification application, the servicer must "provide the borrower a written notice stating the specific payment terms and

7

1    duration of the program or plan," among other details.  12 C.F.R. § 1024.41(c)(2)(iii).  A written

2    notice is not required if the borrower rejects the offer of a forbearance program.  *Id.*

3            To the extent plaintiffs allege that Wells Fargo violated this "timing of notice"

4    requirement, the claim is dismissed with leave to amend.  *See* Dkt. No. 179 at 12.  The TAC says

5    that "[m]any borrowers did not receive any notification letter," but does not allege that Wells

6    Fargo failed to send written notice to any of the named plaintiffs.  Dkt. No. 162 ¶ 463.  In contrast

7    to the TILA claim, nothing in the TAC supports a plausible inference that this occurred with

8    respect to at least one of the named plaintiffs.  The TAC also says that some of the named

9    plaintiffs rejected Wells Fargo's offers of loan modification, *see id.* ¶¶ 283, 392, and that several

10   named plaintiffs received multiple letters from Wells Fargo, *see id.* ¶¶ 268-70, 277, 300, 303-04,

11   310-11, 325-26, 330, 332, 358-59, 382, 384-86.  It is not clear which, if any, of those letters is the

12   basis of plaintiffs' RESPA notice-requirement claim.  Consequently, the TAC does not establish

13   that any named plaintiff has standing to bring this claim.  *See TransUnion, LLC v. Ramirez*, 141 S.

14   Ct. 2190, 2205 (2022) ("'Article III standing requires a concrete injury even in the context of a

15   statutory violation.'") (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *see also In re*

16   *Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("[I]t is a named plaintiff

17   who must possess the requisite standing; it is not sufficient that a putative class member may have

18   standing to press one of the claims.").

19           Regulation X also requires loan servicers to "maintain policies and procedures that are

20   reasonably designed" to ensure that they can "[p]roperly evaluate a borrower who submits an

21   application for a loss mitigation option."  12 C.F.R. §§ 1024.38(a), (b)(2)(v).  Wells Fargo argues

22   that there is no private right of action to enforce these requirements.  Dkt. No. 172 at 13; *see also*

23   *Courtois v. Shellpoint Mortg. Servicing,* LLC, No. CV 20-4095 PA (PVCx), 2020 WL 13586024,

24   at *1 (C.D. Cal. May 26, 2020) ("[N]umerous other courts have concluded that 12 CF.R.

25   § 1024.38 does not provide a private right of action.").  The Consumer Financial Protection

26   Bureau expressly crafted this section of Regulation X not to provide for private enforcement.  *See*

27   78 Fed. Reg. at 10,697-98 ("The Bureau and prudential regulators will be able supervise servicers

28   within their jurisdiction to assure compliance with these requirements but there will not be a

1    private right of action to enforce these provisions."). Plaintiffs did not address this point in their

2    opposition. Consequently, the claim under 12 C.F.R. § 1024.38 is dismissed with prejudice.

## V. CALIFORNIA UCL CLAIM

Dismissal is denied for the California UCL claim. The familiar and frequently litigated UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a claim under the UCL, a plaintiff must allege facts showing that she has "suffered injury in fact and has lost money or property as a result of the unfair competition." *Id.* § 17204. Consequently, plaintiffs' UCL claim requires them to plead facts establishing a "causal connection between [Wells Fargo's] alleged UCL violation and [their] injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) (quotation omitted).

The TAC claims that Wells Fargo violated the unlawful and unfair prongs of the UCL. *See* Dkt. No. 162 ¶¶ 521-29. Wells Fargo asks to dismiss only the unlawful claim, and says it will address the unfair claim "in later motion practice." Dkt. No. 172 at 13 n.15. This argument is not well taken because "[a]dequately pleading any one of the prongs is sufficient to survive a motion to dismiss." *Comin v. Int'l Bus. Machines Corp.*, No. 19-cv-07261-JD, 2021 WL 463431, at *3 (N.D. Cal. Feb. 9, 2021). Moreover, plaintiffs have successfully alleged a violation of the unlawful prong predicated on their plausible TILA claim. That is enough under the UCL.

## VI. FCRA PREEMPTION

Wells Fargo says that plaintiffs' claims under state consumer protection laws are preempted by the FCRA. Dkt. No. 172 at 14. The FCRA expressly preempts state laws that impose requirements or prohibitions with respect to "any subject matter regulated under … section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 regulates the duty of "furnishers of information to provide accurate information" to credit reporting agencies. *Id.* § 1681s-2.

The state law claims are preempted to the extent they regulate credit reporting, but may go forward to the extent they could be construed as unrelated to credit reporting. *See Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1167 (9th Cir. 2009) (Section 1681t(b)(1)(F) "appears

to preempt all state law claims based on a creditor's responsibilities under § 1681-s2"); *see also Peters v. Discover Bank*, 649 F. App'x 405, 408 (9th Cir. 2016) (unpublished) (affirming summary judgment on a Rosenthal Fair Debt Collection Practices Act claim because "to the extent this claim relates to credit reporting, it is preempted by the FCRA").

## CONCLUSION

The RICO, unjust enrichment, and implied covenant claims are dismissed with leave to amend. The RESPA claim under 12 C.F.R. § 1024.41 is dismissed with leave to amend, and the claim under 12 C.F.R. § 1024.38 is dismissed with prejudice. Dismissal is denied for the TILA and California UCL claims. Counts 9, 10, 11, 12, and 13 are dismissed with prejudice to the extent they relate to credit reporting.

Plaintiffs may file an amended complaint consistent with this order by May 19, 2023. No new claims or parties may be added without the Court's prior consent. A failure to meet the deadline will result in dismissal with prejudice of the claims dismissed in this order.

**IT IS SO ORDERED.**

Dated: May 2, 2023

JAMES DONATO
United States District Judge